**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3125
_____

ISRAEL PENA ESPARZA, a/ka Rene Pena, a/ka/Izzy Pena, aka Conrad Pena,
aka Javier E. Pena, a/k/a Raul Esparza, a/k/a Ruben Garcia, a/k/a Renee Garcia,
a/k/a Jose G. Pena,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A008-640-500)
Immigration Judge:  Honorable Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2011
Before:  FUENTES, GREENAWAY, JR. and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed :April 1, 2011)
_____

OPINION
_____

PER CURIAM

Israel Pena Esparza petitions for review of the order of the Board of Immigration

Appeals ("BIA") dismissing his appeal of the Immigration Judge's ("IJ") denial of his

application for asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT").  We will affirm.

I.

Esparza, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident in 1954.  In October 1996, he was convicted in Texas state court of unlawful possession of marijuana and, in 2002, he was convicted of domestic assault.  In January 2006, Esparza was convicted in the United States District Court for the Northern District of Texas of possessing a firearm as a convicted felon.  As a result of those convictions, the Department of Homeland Security ("DHS") initiated removal proceedings against Esparza by filing a Notice to Appear, charging him with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1227(a)(2)(B)(i)] (alien convicted of controlled substance offense); INA § 237(a)(2)(C) [8 U.S.C. § 1227(a)(2)(C)] (alien convicted of possession of a firearm); INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] (alien convicted of an aggravated felony); and INA § 237(a)(2)(A)(ii)] [8 U.S.C. § 1227(a)(2)(A)(ii)] (alien convicted of two or more crimes involving moral turpitude).  Esparza conceded removability and applied for asylum, withholding of removal, and relief under the CAT.

At an administrative hearing, the IJ informed Esparza that because his firearms conviction constituted a "particularly serious crime," see 8 U.S.C. § 1231(b)(3)(B)(iv), he could be considered only for deferral of removal under the CAT.  Esparza then testified in support of his CAT application, claiming that, upon his return to Mexico, he will be tortured by drug traffickers due to his deceased son's unpaid debt.  Specifically, he

2

testified that after his son was killed in 1995 in the El Paso, Texas area, he received a visit from several unknown individuals who informed him that he had become responsible for the payment of his son's drug debt.

Esparza testified that he and his family relocated to another part of Texas shortly after the incident. Although he has not heard from those individuals since that time, he remains fearful that he will be harmed. He testified that he believes that if he is removed to Mexico, individuals from El Paso will communicate with members of the same drug cartel who live in Mexico, and that they will be instructed to harm him. Esparza also believes that the corrupt police force in the area of Mexico to which he will return, Juarez, will be unwilling to protect him.

The IJ denied Esparza's application for deferral of removal under the CAT, finding that he was unable to satisfy his burden of proof. Specifically, he concluded that Esparza had not demonstrated that it is more likely than not that he will be tortured upon his return to Mexico based on his experience fifteen years earlier in the United States. The IJ noted that Esparza could not identify during the hearing who had threatened him following his son's death, but that, in any event, neither he nor his family had been contacted in the years since. The IJ therefore concluded that Esparza's claim that he would be tortured by unknown persons, at the government's acquiescence, was speculative.

Esparza timely appealed the decision to the BIA and, on June 29, 2010, the BIA dismissed the appeal, concluding that the IJ correctly determined that Esparza was unable

to meet his burden of proof under the CAT. Esparza filed a timely petition for review.

## II.

Because Esparza has been convicted of an aggravated felony, a determination he does not challenge, our review of the denial of relief under the CAT is limited to constitutional claims or questions of law. See 8 U.S.C. § 1252(a)(2)(C) & (D); Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc). Where, as here, the BIA agrees with the decision and analysis of the IJ while adding its own reasoning, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009).

To qualify for deferral of removal under the CAT, an applicant must satisfy the same requirements for withholding of removal under the CAT. See 8 C.F.R. § 1208.17(a). That is, he must demonstrate that it is more likely than not that he will be tortured if removed to the country in question. See 8 C.F.R. § 1208.16(c)(2). He must also show that the torture will be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 1208.18(a)(1), (7); Silva- Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007).

## III.

Esparza first argues that the IJ and BIA overlooked the fact that he identified in his asylum application the Juarez drug cartel as the group that seeks to harm him. He claims that as a result of that error, they improperly concluded that he was unable to identify who he believes will harm him upon his return to Mexico. We find Esparza's argument

4

unpersuasive.

Although it is true that Esparza indicated in his asylum statement that his son was friends with members of the Juarez drug cartel, during the administrative hearing he admitted that he did not know who approached him following his son's funeral – "[it] was some people I don't even know, some, some young. They were about my son's age, 27, 28. I didn't even know the people . . ." See Administrative Record ("A.R.") at 123. Esparza did not mention the Juarez cartel during his hearing, explaining only that he did not know who had approached him and that he had not had any contact with those persons in the years since. We perceive no error in the agency's decision to give credence to Esparza's testimony.

Esparza also argues that the IJ applied the wrong standard of review in assessing his claim for deferral of removal under the CAT. Specifically, he claims that the IJ incorrectly applied the "more likely than not," standard instead of the proper "willful blindness" standard. See Pet. Br. at 4. Esparza appears to overlook the fact that these standards apply to different elements of the CAT claim. As indicated above, 8 C.F.R. § 1208.16(c)(2) sets forth the overall controlling standard: the burden is on the applicant "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." The term "torture" is defined by 8 C.F.R. § 1208.18(a)(1) which requires, among other things, severe pain or suffering which "is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." "Willful blindness" is a means of

5

satisfying the acquiescence test, see Silva-Rengifo., 473 F.3d at 69, but is not a substitute for the "more likely than not standard."

Esparza has not demonstrated that the IJ applied the wrong standard of review. Indeed, the IJ carefully set forth the proper standard in his decision, see A.R. 57-59, and there is no evidence to suggest that he misapplied the standard for showing government acquiescence.[1]

For the foregoing reasons, we will deny the petition for review.

---

[1] Esparza also argues that the IJ improperly failed to shift the burden of proof to the Government once he "established past persecution when his son was killed." See Pet. Br. at 4. However, the IJ made no such finding regarding past persecution. We further reject his argument that the IJ violated his due process rights by failing to make a credibility determination as required under 8 C.F.R. § 1208.13. Id. That regulation pertains to asylum eligibility. As noted, the IJ determined that Esparza was ineligible for asylum, and he does not dispute that determination.